**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| BRUCE KAYE AS TRUSTEE OF THE BRUCE KAYE REVOCABLE TRUST, DEBORAH KAYE AS TRUSTEE OF THE DEBORAH KAYE REVOCABLE TRUST, LAURIE KAYE KRUSS AND JASON LEIGH KAYE IN THEIR INDIVIDUAL CAPACITY AND AS TRUSTEES OF THE 2000 BRUCE KAYE DYNASTY TRUST, AND DENNIS A. RICHARD,<br><br>Plaintiffs,<br><br>v.<br><br>FANTASEA RESORTS GROUP, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     C.A. No. 2024-0179-KSJM |

**MEMORANDUM OPINION**

Date Submitted: January 28, 2025
Date Decided: April 17, 2025

Peter B. Ladig, Abraham C. Schneider, BAYARD, P.A., Wilmington, Delaware; Donald H. Chase, Joseph J. Kamelhar, MORRISON COHEN LLP, New York, New York; *Counsel for Plaintiffs Bruce Kaye as Trustee of the Bruce Kaye Revocable Trust, Deborah Kaye as Trustee of the Deborah Kaye Revocable Trust, Laurie Kaye Kruss and Jason Leigh Kaye in their Individual Capacity and as Trustees of the 2000 Bruce Kaye Dynasty Trust, and Dennis A. Richard.*

Stacey A. Scrivani, STEVENS & LEE, P.C., Wilmington, Delaware; Solomon David, STEVENS & LEE, P.C., Philadelphia, Pennsylvania; *Counsel for Defendant Fantasea Resorts Group, Inc.*

**McCORMICK, C.**

The plaintiffs owned stock in the defendant company, a timeshare business. In 2011, the company agreed to allow the plaintiffs to redeem their shares of stock in exchange for non-voting stock and warrants to acquire shares. The plaintiffs could exercise the warrants on or before December 12, 2023. The plaintiffs attempted to exercise the warrants by email on November 27, 2023, and followed up by email in early December. The company did not respond until December 13, 2023, stating that the plaintiffs failed to comply with the procedure for exercising the warrants and that, because the exercise deadline had passed, the warrants were void. The plaintiffs sued the company for breach of the express terms of the warrant agreements. They also asserted claims for breach of the implied covenant of good faith and fair dealing and to inspect the company's books and records. The company moved to dismiss. This decision denies the motion as to the plaintiffs' primary claim for breach of the warrant agreements. This decision grants the motion as to the two add-on claims for breach of the implied covenant and to inspect the company's books and records.

I.      FACTUAL BACKGROUND

These facts are drawn from the Verified Complaint ("Complaint") and the documents it incorporates by reference.[1]

A.      The Company

Defendant Fantasea Resorts Group, Inc. ("Fantasea" or "Defendant") is a Delaware corporation, with its principal place of business in Atlantic City, New

---

[1] C.A. 2024-0179, Docket ("Dkt.") 1 ("Compl.").

Jersey. Fantasea operates as a timeshare business providing vacation ownership products and services. Bruce Kaye founded Fantasea in 2011 and served as its President, Chief Executive Officer, and a member of its Board of Directors until December 2018.

### B.    The Warrants

The plaintiffs are trusts established by Kaye and his family members to hold their Fantasea shares ("Plaintiffs").[2] Before December 2011, Plaintiffs collectively owned 132,500 shares of Fantasea common stock.

On December 12, 2011, Plaintiffs executed an Investor Rights Agreement and a Redemption Agreement, under which Fantasea redeemed Plaintiffs' common stock in exchange for 300 shares of non-voting common stock and six warrants granting the right to purchase 336,972.7213 shares of common stock (the "Warrants").

The Warrants entitled holders to buy shares at an exercise price of $23.00 each, or the holders could elect a cashless exercise to receive common stock equal to the value of the Warrant. Each Warrant contains exercise and notice provisions establishing the procedure by which Plaintiffs were to exercise the Warrants and provide a Notice of Exercise, a form of which was attached to each Warrant. The form allowed the holder to choose, by checking a box, between payment in cash or a cashless exercise.[3]

---

[2] Plaintiffs are Bruce Kaye as Trustee of the Bruce Kaye Revocable Trust, Deborah Kaye as Trustee of the Deborah Kaye Revocable Trust, Laurie Kaye Kruss and Jason Leigh Kaye in their individual capacity and as Trustees of the 2000 Bruce Kaye Dynasty Trust, and Dennis A. Richard.

[3] Compl. Ex. C at 15.

If not exercised, the Warrants would expire on December 12, 2023. The Warrants are governed by Delaware law.[4] Plaintiffs allege that Fantasea's counsel, Greenberg Traurig, P.A., held the Warrants after they were issued.

## C. The November 27 Email

On November 27, 2023, two weeks before the Warrants were set to expire, Plaintiffs emailed a Notice of Exercise for each Warrant to Fantasea's CEO Kevin Jones, CFO Roxanne Passarella, and outside counsel.[5]

The email stated:

> I attach six notices of Warrant Exercise and a letter concerning inspection of the books and records of FantaSea Resorts, Inc. As you will see, the Warrant exercises are based on a cashless exercise, as provided in the Warrant Agreements, and a 2022 share price of $37.20 and a Warrant strike price of $23 per share.[6]

On each Notice of Exercise, Plaintiffs checked the box indicating a cashless exercise and inserted language into the form beside the box. The form Notice of Exercise read: "Shares Net Exercise pursuant to the terms of the attached warrant."[7] Recall that Plaintiffs did not have the Warrants, which remained in Fantasea's

---

[4] *Id.* § 12 at 10–11.

[5] Counsel represented that, by that time, the Warrants were worth approximately $4.8 million. Dkt. 27 ("1/28/25 Oral Arg. Tr.") at 13:19–20. This fact is not found in the pleadings and the court does not rely on it to resolve Fantasea's motion.

[6] Compl. Ex. I at 1.

[7] Compl. Ex. C at 15.

4

possession. Beside the box indicating a cashless exercise, Plaintiffs inserted the following language in each Notice of Exercise:

> [number of warrants] warrants tendered, with a value of $37.20 per Share (and a $23.00 strike price per Share), for a "Net Exercise" pursuant to the terms of the Warrant *resulting in a surrender of warrants* for [number of shares] Shares and the receipt by the undersigned of [number of shares] Shares.[8]

Fantasea did not respond to the November 27 email.

On December 5, 2023, Plaintiffs' counsel followed up with a second email to Fantasea, stating: "Following up on my e-mail from last week. Please arrange to have the share certificates for the warrant shares delivered to my attention at the address below for distribution to the shareholders."[9]

Fantasea did not respond until December 13, 2023, one day after the Warrants expired. Then, Fantasea informed Plaintiffs by email that Plaintiffs had failed to comply with the Warrants' exercise and notice provisions, they therefore failed to exercise the Warrants, and the Warrants had expired.

### D. The Information Demand

Also on November 27, 2023, the Bruce Kaye Revocable Trust demanded inspection of Fantasea's corporate books and records. The Trust made the demand under Section 624 of the New York Business Corporation Law. Fantasea did not respond.

---

[8] Compl. Ex. I at 4–8 (emphasis added).

[9] Compl. ¶ 38.

### E.  This Litigation

Plaintiffs filed this action on February 28, 2024, asserting three counts.

- In Count I, Plaintiffs claim that Defendant breached the Warrants by refusing to issue shares to Plaintiffs and seek specific performance.

- In Count II, asserted in the alternative, Plaintiffs claim that Defendant breached the implied covenant of good faith and fair dealing by failing to respond to the November 27 email until after the Warrants expired.

- In Count III, the Bruce Kaye Revocable Trust seeks the inspection of corporate books and records based on its November 27 inspection demand.

On May 7, 2024, Defendant moved to dismiss the Complaint.[10]  The parties concluded briefing on August 2, 2024, and the court held oral argument on January 28, 2025.[11]

## II.  LEGAL ANALYSIS

Defendant moved to dismiss the Complaint for failure to state a claim under Court of Chancery Rule 12(b)(6).  "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[12]  When considering such a motion, the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[13]  The court, however, need not

---

[10] Dkt. 12.

[11] *See* Dkts. 17 ("Def.'s Opening Br."), 19 ("Pls.' Answering Br.), 21 ("Def.'s Reply Br."), 26.

[12] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

[13] *Id.* (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

"accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[14]

## A. Breach Of Contract

Plaintiffs allege that Defendant "wrongfully rejected the Notices of Exercise by [Plaintiffs] in breach of the Warrants, the Redemption Agreement, and the Investors Rights Agreement."[15] To state a claim for breach of contract, a plaintiff must adequately allege "(i) a contractual obligation, (ii) a breach of that obligation by the defendant, and (iii) a causally related injury that warrants a remedy, such as damages or in an appropriate case, specific performance."[16] A party seeking specific performance must prove other elements, and this court often reviews the availability of an equitable remedy at the pleading stage.[17] To be entitled to specific performance, a party must plead that: (i) an enforceable contract exists; (ii) it has performed under the contract or is ready, willing, and able to perform; and (iii) that the equities tip in its favor.[18]

---

[14] *Price v. E.I. du Pont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[15] Compl. ¶ 58.

[16] *McMilan v. Nelson*, 2024 WL 3311812, at *7 (Del. Ch. July 5, 2024) (quoting *AB Stable VIII LLC v. Maps Hotels and Resorts One LLC*, 2020 WL 7024929, at *47 (Del. Ch. Nov. 30, 2020), *aff'd*, 268 A.3d 198 (Del. 2021)).

[17] *Mercury P'rs Mgmt., LLC v. Valo Health, Inc.*, 2024 WL 413784 (Del. Ch. Feb. 5, 2024).

[18] *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) (citing *Morabito v. Harris*, 2002 WL 550117, at *2 (Del.Ch. Mar. 26, 2002)).

"Delaware courts follow the objective theory of contracts, giving words 'their plain meaning unless it appears that the parties intended a special meaning.'"[19] "In practice, the objective theory requires that a court 'give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions.'"[20] "In so doing, the court evaluates the relevant provision's semantics, syntax, and context, aided by interpretive canons."[21]

Where language is unambiguous, courts "will give effect to the plain meaning of the contract's terms and provisions."[22] "Language is ambiguous if it is susceptible to more than one reasonable interpretation."[23] "An interpretation is unreasonable if it 'produces an absurd result' or a result 'that no reasonable person would have accepted when entering the contract.'"[24] "The parties' steadfast disagreement over interpretation will not, alone, render the contract ambiguous."[25]

Defendant does not dispute that the Warrants contain an enforceable contractual obligation or that damages result in the event of breach. They say that Plaintiffs have not adequately alleged the other elements of breach of contract and

---

[19] *Id.* (quoting *Allen v. Encore Energy P'rs, L.P.*, 72 A.3d 93, 104 (Del. 2013)).

[20] *Id.* (quoting *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016)).

[21] *Id.*

[22] *Manti Hldgs., LLC v. Authentix Acq. Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021) (quoting *Osborn*, 991 A.2d at 1159–60).

[23] *Id.* (citing *Osborn*, 991 A.2d at 1160).

[24] *Id.* (quoting *Osborn*, 991 A.2d at 1160).

[25] *Id.*

specific performance because Plaintiffs failed to properly exercise the Warrants before Defendant's obligation expired.

Two provisions of the Warrants govern the court's analysis:  Section 3(a) (the "Exercise Provision") and Section 15 (the "Notice Provision").

With bracketed numbers added to help guide this discussion, the Exercise Provision states:

> Subject to the terms of the Investor Rights Agreement, dated as of the date hereof, by and between the Company and the Holder, as the same may be amended from time to time (the "Investor Rights Agreement"), the Holder may exercise this Warrant, in whole or in part, at any time, during the period set forth in Section 2 above. Such exercise shall be effected by **[1]** the surrender of the Warrant, together with **[2]** a duly executed copy of the Notice of Exercise attached hereto, to the Secretary of the Company at its principal office (or at such other place as the Company shall notify the Holder in writing) . . . .[26]

The Exercise Provision requires that Plaintiffs surrender the Warrant and provide a Notice of Exercise.  The Exercise Provision also gives specific instructions on how, where, and to whom to provide the Notice of Exercise.

The Notice Provision also provides instructions on how to provide notice, and those instructions apply to "[a]ny notice required to be given hereunder[.]"[27]  It states:

> Any notice required to be given hereunder shall be in writing, and any written notice shall be deemed to have been duly given: (i) if by personal service, on the date of personal service of the party; (ii) if by registered or certified mail, return receipt requested and first-class postage prepaid, on the third business day after mailing; (iii) if by overnight courier or messenger, one day after being sent by

---

[26] Compl. Ex. C § 3(a) at 1–2.

[27] *Id.* § 15 at 11.

9

> professional or overnight courier or messenger service guaranteeing one-day delivery, with receipt confirmed by the courier; or (iv) if by facsimile or telecopy, on the date of transmission, with receipt confirmed. Any such notice shall be delivered or addressed as follows: If to the Company: [ . . . ] Failure to conform to the requirements of this Section 15 shall not defeat the effectiveness of notice actually received by the addressee.[28]

There are more ways to provide notice under the Notice Provision than under the Exercise Provision. The Notice Provision also states that actual notice ("notice actually received") is effective.

According to Defendant, Plaintiffs failed to meet their exercise obligations in two ways: First, Plaintiffs did not surrender the Warrants as required by the Exercise Provision. Second, Plaintiffs did not deliver the Notices of Exercise to the Secretary at Defendant's principal office. Plaintiffs argue that, through the November 27 email, they both surrendered the Warrants and provided actual notice. Plaintiffs prevail on each point, and Defendant's motion to dismiss Count I is denied.

### 1. Surrender

The parties advance different interpretations of the term "surrender." Defendant argues that it requires the physical return of each Warrant.[29] Plaintiffs argue that it does not require physical delivery, and that they effectively surrendered the Warrants through the November 27 email. Plaintiffs also state, and it is

---

[28] *Id.* at 11–12.

[29] Def.'s Opening Br. at 2 (noting that the "Warrants were not included" in the November 27 email from Plaintiffs' counsel and stating that when Plaintiffs' counsel followed up again by email, they "failed to follow the Warrant terms requiring surrender of the Warrants to FantaSea at its principal office").

10

undisputed, that they never held the original Warrants, rendering Plaintiffs' physical surrender of the original Warrants both impossible and unnecessary.

The Warrants do not define "surrender," and the parties cite no case law interpreting this precise term. Accordingly, "Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract."[30] Black's Law Dictionary defines "surrender" as "the act of yielding to another's power or control" or "the giving up of a right or claim."[31] This definition does not require physical delivery for surrender, because one can yield or give up power, control, or rights through words. The Warrants could have required a party to surrender through physical "delivery" of the "original" document, but they did not.[32]

Defendant cites to two cases to argue that "surrender" requires physical delivery of the original Warrants, but neither case supports this position.[33]

In *AJZN, Inc. v. Yu*, a federal court analyzed language similar to that found in the Exercise Provision, requiring surrender of a warrant and subscription "at the

---

[30] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006).

[31] Surrender, *Black's Law Dictionary* (12th ed. 2024); *see also* Surrender, *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/surrender (last visited April 17, 2025) (defining "surrender" as "to give up completely or agree to forgo especially in favor of another").

[32] *See, e.g.*, *QC Hldgs., Inc. v. Allconnect, Inc.*, 2018 WL 4091721, at *4 (Del. Ch. Aug. 28, 2018) (physical delivery required where agreement stated, "[t]o exercise the Put Right . . . [plaintiff] shall deliver . . . the original stock certificate").

[33] Def.'s Reply Br. at 6–7.

principal office of the company."[34] The court dismissed the plaintiff's claim, in part, because the plaintiff failed to allege that it had surrendered the warrant at the principal office of the company. But the court also found that the plaintiff had failed to attempt multiple steps necessary to exercise the warrant, including by failing to pay.[35] The court, therefore, was not called on to analyze language similar to that in the Exercise Provision, or address the meaning of "surrender." *AJZN* thus does not hold that one must physically deliver an original document to surrender it.

In *Rackwise, Inc. v. Archbold*, the plaintiff sought a declaration that certain third-party entities had validly exercised a company's stock warrants.[36] The defendant argued that the entities failed to exercise the warrants because they delivered them to the company's chief restructuring officer instead of the corporate secretary.[37] The court found that the entities had substantially complied with the exercise provision and entered judgment in the plaintiff's favor. In reaching this conclusion, the court did not interpret what "surrender" meant in this context or otherwise. Nor did the court hold that "surrender" required physical delivery. *Rackwise* does not hold that one must physically deliver an original document to surrender it.

The Warrants do not require Plaintiffs to physically deliver the original Warrants to surrender them. Plaintiffs surrendered their Warrants through the

---

[34] *AJZN, Inc. v. Yu*, 2015 WL 331937, at *8 (D. Del. Jan. 26, 2015).

[35] *Id.*

[36] *Rackwise, Inc. v. Archbold*, 2018 WL 4215625 (E.D. Cal. Sept. 5, 2018).

[37] *Id.* at *4.

November 27 email and attachments. The email stated that they were exercising their Warrants. The email attached a Notice of Exercise for each Warrant. Each Notice of Exercise reflected that each Plaintiff was tendering its shares and electing for a cashless exercise, "resulting in a surrender of warrants."[38] This language is enough to yield and give up power, control, and rights over the Warrants.

Plaintiffs' alternative argument also works here. Plaintiffs adequately allege that they could not physically surrender the original Warrants because Defendant retained them through counsel.[39] Plaintiffs identify a host of equitable doctrines that defeat a motion to dismiss on this basis.[40] This decision does not dilate on any of these theories extensively. It is reasonably conceivable that Defendant had control over the original Warrants, which resided in counsel's files, and thus could not require Plaintiffs to physically deliver them.

### 2. Notice

The parties dispute whether Plaintiffs adhered to the applicable notice provisions. Defendant argues that the Exercise Provision established the notice requirements for exercise, and Plaintiffs did not satisfy those requirements.

---

[38] Compl. Ex. I at 3–8.

[39] Defendants dispute this assertion in a footnote in briefing, stating that neither it nor its current counsel possess the original warrants and that it was Plaintiffs' responsibility "to inquire with Greenberg Traurig [as to the whereabouts of the Warrants], who was also Kaye's personal counsel and counsel for the family trust, or initiate the replacement process[.]" Def's. Reply Br. at 5 n.3. The court may not weigh evidence to resolve factual disputes at the pleading stage.

[40] Pls.' Answering Br. at 22–25.

Plaintiffs argue that the Notice Provision allowed for actual notice, which they provided.

The plain language supports Plaintiffs' argument. The Exercise Provision requires notice—the Notice of Exercise. The Notice Provision applies to "[a]ny notice required to be given hereunder . . . ." The Notice Provision therefore applies to the form of notice required to be given under the Exercise Provision.

Plaintiffs complied with the Notice Provision. The last sentence of the Notice Provision states that "[f]ailure to conform to the requirements of this Section 15 shall not defeat the effectiveness of notice actually received by the addressee." Plaintiffs have adequately alleged that Defendant "actually received" the Notices of Exercise, and Defendant's December reply confirms this fact. Thus, Plaintiffs contend that they have satisfied their obligation concerning the Notices of Exercise.

Defendant responds in four ways. First, Defendant argues that the Notice of Exercise, and the requirement that it be delivered "to the Secretary of the Company at its principal office (or at such other place as the Company shall notify the Holder in writing)," was not a notice provision at all. Rather, it was a requirement of exercise.[41] But the fact that the documentation is titled "*Notice* of Exercise" undermines Defendant's argument.

Second, Defendant argues that Plaintiffs are relying on an "improperly modified form Notice of Exercise" because they added language to the Notices of

---

[41] *See* Def.'s Opening Br. at 7 (stating Plaintiffs did not exercise their Warrants "because [they] failed to surrender [their] Warrant[s] together with the Notice[s] of Exercise to the Secretary of the Company at its principal office").

Exercise to clarify that they were surrendering the Warrants.[42]  But nothing in the Warrants prevented Plaintiffs from modifying the form.  The form itself required Plaintiffs to fill in a few blanks.  And Plaintiffs' modification did not materially alter the Notices of Exercise such that their purpose was frustrated (they still provided notice); it merely clarified that Plaintiffs were surrendering their rights to the Warrants.  Plaintiffs' modification did not render the Notices of Exercise ineffective.

Third, Defendant argues that Section 3 of the Warrants is the provision that controls because it "specifically addresses procedures for exercising Warrants."[43]  Although uncited, Defendant's argument rests on the canon of contractual construction providing that where a specific contractual provision conflicts with a general provision, the specific provision governs.[44]  But the maxim applies only when provisions stand in conflict.  The contractual scheme reflects multiple ways to accomplish notice.  That is neither unusual nor discordant.

Fourth, Defendant cites to two cases denying specific performance where the plaintiffs failed to strictly adhere to contractual terms to exercise certain rights.[45]

---

[42] Def.'s Reply Br. at 3.

[43] *Id*. at 2.

[44] *See DCV Hldgs., Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) ("Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one.").

[45] Def.'s Opening Br. at 13–15 (citing *Simon-Mills II, LLC v. Kan Am USA XVI Ltd. P'ship*, 2017 WL 1191061 (Del. Ch. Mar. 30, 2017) (finding that the plaintiffs did not satisfy the strict terms of a call right when they tried to exercise the right by substituting the contractually agreed-upon consideration (Mills Units) with a different type of consideration (Simon Units or cash)) and *AluminumSource, LLC v. LLFlex, LLC*, 2023 WL 2547996 (Del. Super. Mar. 16, 2023) (finding that the plaintiff

15

They argue that Plaintiffs must plead strict adherence here. But Plaintiffs did strictly adhere to the plain language of the Warrants, which allowed for actual notice. These cases are thus uninformative.

Count I states a claim and the motion to dismiss Count I is denied.

### B.    Breach Of The Implied Covenant

In Count II, Plaintiffs claim that Defendant breached the implied covenant of good faith and fair dealing by delaying its response to Plaintiffs' November 27 email until after the Warrants expired. To state a claim for breach of the implied covenant, a plaintiff must "allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff."[46]

Plaintiffs agree that if their contractual interpretation prevails for purposes of Count I, then "Count II is naturally superfluous and effectively moot."[47] Because Plaintiffs' contractual interpretation prevails as to Count I, Count II does not work. In the language of implied covenant jurisprudence, Plaintiffs have failed to state a claim for breach of the implied covenant of good faith and fair dealing because there is no gap in the Warrants for the covenant to fill. The Exercise Provision and the Notice Provision comprehensively address the issue at hand.

Count II fails to state a claim and is dismissed.

---

failed to submit a proper claim for indemnification where it did not send a "claim certificate," which had several required components under the governing contract)).

[46] *Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998).

[47] Pls.' Answering Br. at 27.

16

## C. Inspection Of Corporate Books And Records

In Count III, Plaintiffs seek to inspect Defendant's books and records under New York Law. Defendant is a Delaware corporation.[48] Delaware law therefore governs Plaintiffs' rights as stockholders.[49] Section 220 of the Delaware General Corporation Law governs Plaintiffs' right to inspect Defendant's books and records.[50] Plaintiffs have not met any of the obligations of Section 220, and they do not dispute this fact.[51]

Plaintiffs assert that New York law, rather than Delaware law, governs because the Investor Rights Agreement includes a New York choice-of-law provision.[52] But Plaintiffs did not seek to inspect books and records under any portion of the Investor Rights Agreement. Nor does the choice-of-law provision of the Investors Rights Agreement purport to wholesale displace the Delaware General Corporation Law with the New York Business Corporation Law, as Plaintiffs suggest.

Count III fails to state a claim and is dismissed.

---

[48] Compl. ¶ 5.

[49] *See Juul Labs, Inc. v. Grove*, 238 A.3d 904, 907 (Del. Ch. 2020) ("The Company is a Delaware corporation. Under principles articulated by the Supreme Court of the United States and applied by the Delaware Supreme Court, Delaware law governs its internal affairs. The scope of [the stockholder's] inspection rights is a matter of internal affairs, so Delaware law applies.").

[50] 8 *Del. C.* § 220.

[51] 1/28/25 Oral Arg. Tr. at 24:1–25:3 ("THE COURT: . . . I think you concede that if Delaware law applies that your client has not satisfied the obligations under [8 *Del. C.*] 220(b); is that correct? ATTORNEY CHASE: Yes.").

[52] Pls.' Answering Br. at 31–33.

**III.    CONCLUSION**

Defendant's motion to dismiss is denied as to Count I and granted as to Counts II and III.